## D. S. ARNOLD V. THE STATE.

### No. 3042.   Decided May 20, 1914.

Rehearing denied June 17, 1914.

**1.—Arson—Accomplice—Indictment—Insurance.**

Where defendant was indicted as an accomplice for arson, it was not necessary to allege in the indictment that he knew the alleged house was insured or by what authority the same was insured; it is only necessary to allege that it was insured, and the indictment following the statute, the same was sufficient.   Following Baker v. State, 25 Texas Crim. App., 1, and other cases.

**2.—Same—Intent to Defraud—Insured Property—Charge of Court.**

It is not necessary under the statute to require that the intent of the defendant when he burned insured property is to defraud the insurance company, and it was not necessary for the State to prove that defendant had a valid insurance policy issued by some company authorized and permitted to do so, and for the court to charge what was meant by insured against loss or damage by fire.

**3.—Same—Description—Surplusage.**

Where the indictment charging defendant as an accomplice to arson alleged that he unlawfully, wilfully and maliciously set fire to and burned said house, and also made some unnecessary allegations, and not descriptive of the offense, the same may be treated as surplusage, and it was not necessary to prove same.   Following Goodwin v. State, 70 Texas Crim. Rep., 600, and other cases.

**4.—Same—Evidence—Flight—Void Indictment.**

Upon trial of arson of an accomplice, there was no error to admit testimony that, previous to the indictment in the instant case, defendant had been indicted for the same offense and had forfeited his bond, and the objection that the first indictment was defective and charged no offense was untenable.

**5.—Same—Evidence—Bills of Exception—Insurance Policy.**

Where defendant was indicted as an accomplice to arson for causing to be burned a house upon which there was a fire insurance policy, there was no error in introducing testimony that the house was insured and defendant's connection and knowledge with and of said facts and also the insurance policy; besides, the bills of exception did not point out why said testimony was inadmissible, and there was no reversible error.   Following Conger v. State, 63 Texas Crim. Rep., 312, and other cases.

**6.—Same—Evidence—Accomplice—Charge of Court.**

Where, upon trial of arson in which defendant was charged as an accomplice, the State introduced defendant's brother as a witness to prove certain facts, and there was no evidence that said witness was a principal or an accomplice to the arson, there was no error in the court's failure to charge on accomplice testimony; besides did so charge.   Following Davis v. State, 52 Texas Crim. Rep., 332, and other cases.

**7.—Same—Sufficiency of the Evidence.**

Where, upon trial of arson charging defendant as an accomplice, the evidence was sufficient to sustain the conviction under a proper charge of the court, there was no error.

Appeal from the District Court of Somervell.   Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of arson as an accomplice; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*A. S. Baskett* and *Hiram Glass* and *Mahaffey, Thomas & Hughes,* for appellant.—On question of insufficiency of indictment: Moore v. State, 66 Texas Crim. Rep., 169, 146 S. W. Rep., 183.

On question of the court's charge in failing to explain to the jury was is meant by the term insured against loss or damage by fire: Freeman v. State, 52 Texas Crim. Rep., 500; Putman v. State, 29 Texas Crim. App., 454; Blain v. State, 30 id., 702.

On question of refusing defendant's special charge: Warrington v. State, 1 Texas Crim. App., 168; Withers v. State, 21 id., 210; Melton v. State, 58 Texas Crim. Rep., 86, 124 S. W. Rep., 910; McAllister v. State, 116 S. W. Rep., 582.

On question of introducing in evidence insurance policy: Johnson v. State, 9 Texas Crim. App., 249; Saunders v. Duval, 19 Texas, 467; Golin v. State, 37 Texas Crim. Rep., 90.

On question of accomplice testimony: Huffman v. State, 57 Texas Crim. Rep., 399, 123 S. W. Rep., 596; Close v. State, 55 Texas Crim. Rep., 380, 117 S. W. Rep., 137.

On question that State must prove that the burning was malicious: Rogers v. State, 26 Texas Crim. App., 404; Martinez v. State, 51 Texas Crim. Rep., 584.

On question of court's charge in failing to submit whether insurance organization existed, etc., and had a right to issue insurance policies: Walton v. State, 29 Texas Crim. App., 163; Bailey v. State, 30 S. W. Rep., 669; Merrell v. State, 42 Texas Crim. Rep., 19; Sledge v. State, 63 S. W. Rep., 317.

On question of insufficiency of evidence: Meister v. People, 31 Mich., 99.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of sufficiency of the indictment: Bluman v. State, 33 Texas Crim. Rep., 43, and cases cited in opinion.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted of accomplice to arson and assessed the lowest punishment authorized by law.

After the formal part of the indictment, it avers that on or about September 19, 1910, T. E. Allen did "unlawfully, wilfully and maliciously set fire to and burn a certain house of one D. S. Arnold . . . said house being then and there insured against loss and damage by fire"; and "that D. S. Arnold, in said county and State aforesaid, and before the commission of said offense of arson, by the said T. E. Allen as aforesaid, towit; on or about the 1st day of September, A. D. 1910, did unlawfully and wilfully promise and agree to pay him, the said T. E. Allen, the sum of Five Hundred Dollars in order to procure him, the said T. E. Allen, to commit the offense of arson as aforesaid, and by such promise and agreement did procure and induce the said T. E.

Allen to burn said house aforesaid, which was then and there insured against loss or damage by fire, and in order to procure and collect the insurance on said house; the said D. S. Arnold not being present at the commission of said offense by the said T. E. Allen."

Appellant moved to quash said indictment on these grounds: 1. It failed to allege any offense. 2. It failed to allege or sufficiently· allege the commission of any offense by Allen. 3. It failed to allege facts sufficient to show Allen guilty of arson—particularly, that the house burned by Allen, when burned, was owned by appellant and no facts were alleged which made it unlawful for him to burn his own house, except that it was insured against loss or damage by fire; and that it was not burned by Allen with appellant's knowledge, consent and procurement and that Allen knew when he burned it that it was so insured; nor were any facts alleged which show that Allen knew of any facts existing which would have made it unlawful for appellant to burn or cause it to be burned; nor that Allen knew that his, appellant's purpose in procuring the burning was to procure the insurance, nor to enable him to collect the insurance. 4. It is not alleged by whom or in what manner or by what·authority the house was insured; neither are any facts alleged from which can be determined that said house was insured when burned.

Our statute, article 1200, Penal Code, says: "Arson is the wilful burning of any house. . . ."

Article 1207, Penal Code, is: "The owner of a house may destroy it by fire . . . without incurring the penalty of arson, except in the cases mentioned in· the succeeding article."

Article 1208, Penal Code, is: "Exceptions,—when a house . . . is insured . . . the owner, if he burn the same, is guilty of arson and shall be punished accordingly."

Appellant's motion to quash was correctly overruled. The indictment completely follows the statute and alleges everything necessary or proper to properly charge the offense of accomplice to arson against the appellant. It follows the standard forms. As to the principal, Allen, it was not necessary for the indictment to allege, only in the terms of the statute, that the house was insured, in order to charge him as principal with the burning. It was not necessary to allege that Allen knew that the house was insured. That was a matter of defense by him if he had been on trial as principal, and was a matter of defense, so far as appellant was concerned, when he was charged as an accomplice to the arson. Neither was it necessary to allege by whom or by what authority the house was insured. It was only necessary to allege that it was insured, under the very statute itself. Baker v. State, 25 Texas Crim. App., 1; Tuller v. State, 8 Texas Crim. App., 501; Thomas v. State, 41 Texas, 27.

Appellant contends that before the State could secure his conviction it was necessary for the State to prove that appellant had a valid insurance policy issued by some company authorized and permitted to do so and that it was necessary for the court, in his charge, to explain to the

jury what was meant by insured against loss or damage by fire. These questions are raised and presented in various ways.

We have quoted our statutes above, applicable to these questions. It will be seen therefrom that our statute does not require that the intent of an appellant, when he burns insured property, is to defraud the insurance company. The offense is simply and solely that the property is insured at the time he burns it. That this is not required is made manifest when we consider article 1220, Penal Code, which provides "if any person, with intent to defraud, shall wilfully burn any personal property owned by himself which shall be at the time insured against loss or damage from fire, he shall be punished, etc." Under that article it would be necessary to allege and prove that in burning the insured property it was with intent to defraud.

In 2 Whart. Cr. Law, sec. 1077 (11 ed.) he says: "Under a statute making it an offense to burn insured property with intent to defraud the insurer, the burden is on the prosecution to prove that the property was insured; some of the cases hold that the proof must show a valid subsisting insurance, as the statute prohibits only the burning of property actually insured; but the better opinion is thought to be that the gravamen of the offense is the burning of the property with the intent to injure the insurer by realizing the insurance, and that the legality of the policy, or the right of the insurance company to do business in the State is not a material issue, and it will be sufficient to show the delivery of a policy of insurance to the defendant, without showing that the insurance was valid and he could collect thereon," citing the decisions of several States.

In 1 Ency. of Ev., p. 987, it is said: "It is unnecessary to prove the legal existence of the insurance company; nor the validity of the policy of insurance issued to the accused; nor that the latter could sue upon such policy," citing a large number of cases from various States and from the United States Supreme Court.

3 Cyc., 1003, says: "It must be alleged that the property burned was at the time insured against fire; but the indictment need not aver·that accused held a valid policy or any policy, nor need the policy be set forth according to its tenor," citing a large number of cases.

In 5 A. & E.· Ency. of Law & Prac., 596, it is said: "It has been held that the insurance policy need not necessarily be valid if the defendant believed it to be valid." That author notes, however, that the authorities do not uniformly so hold.

In support of these texts and fully bearing them out, the following cases are cited: U. S. v. Amedy, 11 Wheat., 392, 6 L. Ed., 502; State v. Byrne, 45 Conn., 273; McDonald v. People, 47 Ill., 533; People v. Hughes, 29 Cal., 257; People v. Morley, 8 Cal. App., 372; Johnson v. State, 65 Ind., 204; People v. Jones, 24 Mich., 215; Parb v. State, 143 Wis., 561; State v. Tucker, 84 Mo., 23; Cowan v. State, 22 Neb., 519; Commonwealth v. Goldstein, 114 Mass., 272; People v. Schwartz, 32 Cal., 160; U. S. v. McBryde, 7 Mackey (Dist. Col.); Carncross v.

People, 1 N. Y. Cr., 518; Freund v. People, 5 Park Cr., 198; Evans v. State, 24 Ohio St., 458.

Appellant invokes the rule which is well established to the effect that when a person, place or thing necessary to be alleged in an indictment is described particularly, all of the descriptions must be proved for they are made essential to the identity of the person, place or thing. He attempts to apply this to various things in the indictment. Thus, the indictment, as shown above, alleged that said Allen "unlawfully, wilfully and *maliciously* set fire to and burned said house." He claimed that because the indictment used the word *maliciously* that unless the court required that this should be proven and that it had been proven that they must acquit appellant. Again, the indictment copied above, among other things, alleges that appellant, in Somervell County, Texas, before the commission of this offense promised and agreed to pay Allen $500.00 to procure him to burn said house. He claims that the State was bound to prove that he promised and agreed to pay Allen $500.00, no more and no less, and that the State must prove that this agreement to pay this money was in Somervell County and not elsewhere. In our opinion none of these contentions can be sustained. It is wholly immaterial where appellant was when he agreed and promised to pay Allen $500.00 to burn said house. It is no part of a necessary allegation to show the offense. It was not necessary to so allege. That part of the allegation not only could, but should be regarded and treated as surplusage. See Goodwin v. State, 70 Texas Crim. Rep., 600, 158 S. W. Rep., 274; Byrd v. State, 72 Texas Crim. Rep., 242, 162 S. W. Rep., 360; Thompson v. State, 69 Texas Crim. Rep., 31, 152 S. W. Rep., 893, and a large number of cases cited in these. The text-books are to the same effect.

An indictment which alleges the theft of two horses is met by proof of the theft of only one of them. It is unnecessary to prove the theft of both. Alderson v. State, 2 Texas Crim. App., 10; Edwards v. State, 26 Colorado, 539; Edson v. State, 148 Ind., 283; 1 Whart. Crim. Ev., sec. 129. Where the theft of a specific amount of money is alleged, proof that any sum, either more or less, is sufficient. Robinson v. State, 62 Texas Crim. Rep., 645. An indictment alleging that strychnine was mingled with coffee with the intent to kill two persons, naming them, proof that the intent was to kill only one of them was sufficient. Terry v. State, 62 Texas Crim. Rep., 73; see also Mansfield v. State, 17 Texas Crim. App., 468; Monford v. State, 35 Texas Crim. Rep., 237; Scott v. State, 46 Texas Crim. Rep., 305; Nite v. State, 41 Texas Crim. Rep., 340.

2 Bish. New Crim. Proc., sec. 478, says: "Needless words and averments may ordinarily be treated as mere waste material, having no legal effect whatever. They need not be proved or otherwise regarded. For example (sec. 479), an indictment either on a statute or at the common law fully setting out the offense, is not rendered ill by the addition of matter aggravating it beyond the laws defining."

In Howard v. State, 65 Texas Crim. Rep., 25, 143 S. W. Rep., 178, the indictment alleged the forgery of an instrument "with intent to injure *and* defraud." It was held the court correctly charged that if appellant forged the instrument with intent to injure *or* defraud. Berliner v. State, 6 Texas Crim. App., 181.

Previous to the indictment in this case appellant had been indicted for the same offense in Somervell County, arrested, and made bond therein. The State sought to show, and introduced testimony tending strongly to show, flight by appellant and as bearing on this issue it introduced in evidence the previous indictment which seemed to have been defective, and the judgment nisi therein forfeiting his said bond. Appellant objected to this because the indictment was in a different case; that it was defective and charged no offense, was immaterial and irrelevant, etc. The court, in qualifying his bill, stated that the State sought to show his flight to avoid trial at a previous term of court for the offense for which he was at this time being tried, though under different indictment. This evidence in our opinion was admissible for the purpose, as indicated by the court's qualification.

Appellant has two bills of exceptions. After giving the style and number of the cause, etc., one of them states that the State offered in evidence what purported to be a certain policy of insurance issued to J. L. Keaton by the Ginners' Mutual Underwriters of San Angelo, unincorporated, home office Dallas, Texas, an organization of gin owners for mutual protection against loss by fire, wind or lightning, as provided by the terms of such policy (which is too lengthy to be copied in the bill), purporting to insure the house described in the indictment, and the machinery, etc., therein contained, against all direct loss or damage by fire, in the sum of $1400.00, purporting to have been executed by said concern July 15, 1910, by and through L. A. Murff, manager, said policy being the same and only one offered or introduced in evidence by the State. This is the whole substance of the statement in the bill pertaining to the matter. No other statement whatever is made as to the status of the case, the proof or anything else. Then follows appellant's objections to the introduction of said policy. They are: 1. It is not issued by any corporation, but by an organization of gin owners and the State had not proved who any of them were or who constituted such organization. 2. That it was not shown that Murff, who purported to act as manager, had any authority from said concern to act for them or execute and deliver said policy. 3. That it was not shown that Murff executed said policy. 4. Its execution was not proven by the State. 5. It was not shown that said concern had complied with the laws of the State or were authorized thereby to issue said policy.

The bill then states these objections were overruled, and the policy was admitted in evidence. The court qualifies the bill by stating that on said policy which was issued to said Keaton, the then owner of the gin, it was transferred to defendant in writing by Keaton after defendant traded for the gin, and the signature of Keaton to said transfer

was proven and the defendant in writing accepted the transfer and signed the acceptance and his signature thereto was proved and after the fire he attempted to collect the insurance under said policy.

The other of said bills, after the formal parts, style, number of cause, etc., stated that the State offered in evidence the said transfer of Keaton to him and the acceptance, etc., of said transfer by said Ginners Mutual ·Underwriters, which was in the following language:

"For and in consideration of the above application the terms of which is made a warranty on the part of D. S. Arnold of Dallas, Texas, to assume the payment of all dues and assessments now due or that may become due on policy No. 1593, issued to J. L. Keaton of Glen Rose, Texas, and that the said D. S. Arnold of Dallas, Texas, warrants and agrees to abide by all of. the conditions of the policy, and of the application for said policy. The Ginners' Mutual Underwriters of San Angelo, does this day cause said policy to be transferred to the said D. S. Arnold of Dallas, Texas. This the 3rd day of Sept. 1910. Ginners' Mutual Underwriters of San Angelo, L. A. Murff, Manager." Appellant objected to this for substantially the same reasons as to the introduction of the policy above noted. The court qualified the bill by stating that defendant testified he knew Murff as manager of the Ginners' Mutual Underwriters of San Angelo and that upon receipt of the policy by mail from Keaton of Glen Rose, Texas, he, defendant, personally took said policy to the office of Murff in Dallas for the purpose of having said Murff to execute the transfer set out in the bill; that Murff was not in the office at the time and that he left it in said office with Murff's employe to be executed upon Murff's return; that defendant returned to said office the next day and Murff's stenographer handed to him the policy so transferred and executed, as shown by this bill; that Murff was not in the office on defendant's return for the policy. And he further testified that on learning of the fire he immediately went to the office of Murff and notified him of the fire and had Murff to 'phone and ascertain whether or not the gin was actually burned.

These bills and neither of them, under the long and well established rules are sufficient to authorize or justify this court to consider them. Some of these rules are noted in James v. State, 63 Texas Crim. Rep., 75, and Conger v. State, 63 Texas Crim. Rep., 312; Best v. State, 72 Texas Crim. Rep., 201, 164 S. W. Rep., 996. By said rules it is clearly established that appellant's objections in the bill are not statements of facts and that the judge signing the bill does not certify that such objections are statement of facts, but his signature merely attests the fact that such objections were made. We could not, from these bills, tell whether these documents were admissible in evidence or not, except that the court's qualification of them indicates that they were admissible. The duty of appellant is to show by the bills affirmatively by a statement of facts and not by objections, that the evidence was inadmissible and unless he does so, we must hold that the court correctly overruled same. As an illustration of why this is necessary, we would be put to the

necessity of going to a statement of facts in this case, which is in fine typewriting, containing 110 pages and in the ordinary type it would amount to at least 125 pages, and search this whole statement of facts to learn whether or not this evidence was admissible. But if we were to go to it, we would find that the facts and circumstances therein shown, would clearly show that these documents objected to were admissible in evidence and that they were amply proven up. What we have said above about the policy of insurance and what the State has to show, is applicable to this question so far as the merits of the introduction of the policy transferred and acceptance by the company, are concerned.

Briefly stated, it shows that appellant himself was the agent of said insurance concern that induced Keaton to insure said house and said concern to issue to Keaton said policy; that very soon afterwards he bought this insured property from Keaton, took a deed therefor to him, and had Keaton at the time to transfer and deliver said policy to him; that he took the policy himself to the insurance concern with Keaton's transfer to him and had the company to assent thereto and so indorse its consent on said policy and redeliver the same to him; that as soon as he got the deed to the property and policy and practically as part of the same transaction, he hired said Allen to burn the gin in order that he might get the insurance thereon, agreeing to pay Allen either $500 or half of the insurance; that he at the same time and in the same trade turned the property over to Allen as his agent and manager for said purpose; that Allen, in accordance with his agreement with appellant, burned said gin; that at the time he got the policy he regarded it is a valid policy and so regarded it after the burning; that he put it in his attorney's hands for collection and suit if necessary, and that afterwards he authorized Mr. Alexander to settle policy with the company for him and that Alexander did settle it with the company and that he got part of the proceeds of what the company paid in settlement therefor. The evidence on some of these issues was contradictory, but it was amply sufficient to show the facts stated above. So that even if we could consider the said bills, they present no error and the evidence objected to thereby was admissible.

One of the material witnesses against appellant was J. W. Allen, the brother of T. E. Allen, who was appellant's agent and whom he hired to burn and who did burn said gin for him. T. E. Allen was indicted and convicted for burning said house. He appealed the case to this court and it was affirmed, being reported in 62 Texas Crim. Rep., 501. As soon as T. E. Allen was arrested his brother, J. W. Allen, undertook to aid him in his defense and to assist in the employment of his attorneys. He had information that his brother had been employed by appellant to burn said gin in order to get the insurance and that in order to induce T. E. Allen to burn it, appellant had agreed to pay him $500 or one-half of the insurance, as stated above. J. W. Allen sought repeatedly to induce appellant to pay T. E. Allen's attorneys' fee and to pay him what appellant had agreed to pay T. E. Allen to burn said house.

The evidence is sufficient to show, and the jury was authorized to believe, that appellant did convey the lot on which the gin had been burned, indirectly to one of T. E. Allen's attorneys as a fee for defending T. E. Allen. This is the sole connection that J. W. Allen had with the offense. There is no intimation that he was a principal or accomplice to the arson and that what he did after both offenses were completed,—the arson and the accomplice to arson—was directly aiding his brother in the defense of his suit and after his conviction, seeking to have him pardoned. This, neither under the statute, nor decisions, made him an accomplice so that his testimony had to be corroborated. Penal Code, art. 87; Chitister v. State, 33 Texas Crim. Rep., 635; Davis v. State, 52 Texas Crim. Rep., 332; Smith v. State, 51 Texas Crim. Rep., 137; Robertson v. State, 46 Texas Crim. Rep., 441; Chenault v. State, 46 Texas Crim. Rep., 351; Holley v. State, 49 Texas Crim. Rep., 306. So that the court did not have to charge that J. W. Allen was an accomplice or submit that question to the jury and require that his testimony be corroborated, but as the court did submit the question and require his testimony to be corroborated, this was in appellant's favor and not against him and even if any error had been made as claimed in the charge on this subject, it would present no reversible error.

The evidence was clearly and amply sufficient to sustain the conviction.

While we have not taken up each and every one of appellant's assignments of error, what we have said embraces and disposes of all of them. It was not necessary to take up each separately. There is no reversible error shown in the trial of this case and the judgment will be affirmed.

*Affirmed.*

[Rehearing denied July 17, 1914.—Reporter.]